ANTOINE JONAU *v.* MARIE LOUISE HERMINA BLANCHARD and others.

2r 513|
52 1521|

Where a name has been used by a partnership for the purpose of a fictitious credit, with the consent of the partner *in commendam*, the latter cannot avail himself of the provisions of art. 2821 of the Civil Code, to withdraw the amount advanced by him, or to free himself from responsibility, either towards his partner or third persons.

The father and natural tutor having advanced the capital for a minor child, not yet emancipated, constituted her, by notarial act, a partner *in commendam*. *Held,* that the authorization to enter into the partnership, having been given by notarial act, was equivalent to an emancipation ; that the father clearly intended to give her the necessary authorization to enter into the partnership ; and that whatever words may be used, effect will be given to the intention of the father, if expressed in an act clothed with the necessary solemnities.

An emancipated minor may engage in trade, and he will be bound by his commercial engagements as a person of full age.  C. C. 379, 1867, 2222.  He may form a general partnership, as well as one *in commendam*.

The ratification by a husband of a contract of partnership entered into by his wife, an unemancipated minor, before marriage, will be binding on the latter, he being by law the administrator of her dower.  C. C. 2327, 2329, 2330. 2334.

The dissolution of a partnership is not an act of administration, and, therefore, requires a special power.  It does not come within the general powers of an agent.  C. C. 2966.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*L. Janin,* for the plaintiff.

*L. C. Duncan,* for the appellants.

MORPHY, J.   The petition sets forth that, in June, 1834, the plaintiff entered into a commercial partnership with Auguste Metoyer and Emilien Larrieu, to carry on a commission business in this city, under the firm of Jonau, Metoyer & Co.   That the partnership having been dissolved, by consent of all parties, the plaintiff was authorized to continue the business for his own account, and to use the name of the old firm of Jonau, Metoyer & Co.   That on the 24th of May, 1838, the plaintiff, by notarial act, formed a partnership *in commendam* with Marie Louise Hermina 'Benoist, then a minor, represented by Nicolas Benoist, her father and natural tutor, in which the plaintiff was to be the general partner, and the said Hermina Benoist the partner *in commendam,* and that the business was to be conducted under the firm of Jonau, Metoyer & Co.   That the capital was to be formed with eight

thousand dollars to be furnished by the plaintiff, and ten thousand by Hermina Benoist, and the partnership was declared to have commenced on the 1st of April, 1838, and was stipulated to last until the 1st of April, 1840. That although it was stated in the notarial act that the sum of ten thousand dollars had been paid in cash by Hermina Benoist, the money was not so paid, but that two mortgage notes of $10,000 each, drawn by Thayer and Hooker, to the order of, and endorsed by Twitchell, and belonging to Nicolas Benoist, were placed in the hands of the plaintiff, on the pledge of which his own note for $10,000, was discounted by the Merchants' Bank, and netted $9346 67. That in February, 1839, Thayer and Hooker paid on account of the notes $5000, which were applied to the partial payment of the note of Jonau, Metoyer & Co.; and that for the balance of $5000, the plaintiff gave a new note payable one year after date. That one of the two notes of Thayer and Hooker was then returned to Benoist, the other still remaining pledged to the Bank, after having been renewed. That in January, 1839, Marie L. H. Benoist intermarried with Albert Gallatin Blanchard, and, in her marriage contract, which was made with the consent and assistance of Nicolas Benoist, her father, she constituted to herself in dower the ten thousand dollars supposed to have been brought into the house of Jonau, Metoyer & Co., and agreed that the sum should be withdrawn as soon as possible from the said commercial house, and employed in the purchase of immoveable property, under the direction and advice of Nicolas Benoist. That on the 29th of April, 1839, A. G. Blanchard entered into an agreement, under private signature, in which he ratified and confirmed the partnership, formed by his wife prior to her marriage. That shortly after, in May, 1839, private business compelled the plaintiff to go to Europe, previous to which he gave a power of attorney to Charles Martinez, for the transaction of his private and individual business here ; leaving the administration of the affairs of his commercial house to Emilien Larrieu, who had a power of attorney to that effect, under which he acted, to the knowledge of Benoist and Blanchard.

The petition further represents that from the time of the formation of the partnership, Nicolas Benoist had access to the partnership books, consulted them frequently, and offered and gave . his

Jonau v. Blanchard and others.

aid in the business of the firm. That on the 24th of April, 1839, Auguste ⸱Metoyer, who was indebted to the plaintiff, agreed to give, and did give, with the consent of the plaintiff and of Nicolas Benoist, in liquidation of a part of his debt, four drafts drawn by him on the house of ⸱Jonau, Metoyer & Co⸱ to the order of Nicolas Benoit, and payable one year after their date, amounting together to the sum of $11,300. That N. Benoist permitted the use of his name as endorser, apparently with a view to facilitate the discounting of these drafts, and to assist the firm in its business. That after the plaintiff's departure, N. Benoist, for the purpose of⸱ rendering more easy the negotiation of these notes, and of securing himself still better, advised that their payment should be secured by a mortgage, which was accordingly executed by Charles Martinez, as attorney in fact of the plaintiff. That in the course of the arrangements, the drafts were confidingly allowed to go into the hands of Benoist at the notary's office, where they had been left to be paraphed. That Benoist⸱ no sooner had them in his possession, than he refused to surrender them, and, under various frivolous and unfounded pretences, claimed, together with the said A. G. Blanchard, the dissolution of the partnership *in commendam*, and the restitution of the sum of $10,000 brought into the partnership, and insisted on retaining the acceptances in satisfaction of the claim. That Martinez, misled by Benoist, and ignorant of the plaintiff's rights, dissolved the partnership by a notarial act, passed on the 28th June, 1839, and abandoned to Blanchard the ownership of the four drafts, the excess of which, over $10,000, was to be paid to the plaintiff. That the act of dissolution is null and void, Martinez having had no authority whatever to execute it, or to consent in any manner to the dissolution of the partnership. That in thus prevailing upon Martinez, through threats and misrepresentations, to consent to the dissolution of the partnership, Benoist and Blanchard had no good ground to require such dissolution, and were governed only by the belief that the sum of $10,000 could be more advantageously employed. That the withdrawal of the sum of $11,300 from the active means of the concern, during the present period of commercial embarrassments, and the sudden dissolution of the partnership demanded by Benoist and Blanchard, who were known to be well acquainted with all its

affairs, destroyed the credit of the plaintiff's house, brought it nuder protest, and deprived it of a considerable portion of its business, whereby the plaintiff has suffered damages to the amount of $20,000. The petition concludes by praying, that the act of dissolution of the 28th of June, 1839, may be annulled ; that the partnership may be declared to have been in existence until the 1st of April, 1840 ; that the four drafts may be ordered to be surrendered to the plaintiff by the defendants, and may be, in the mean time, sequestered in their hands ; and that they be condemned to pay plaintiff $20,000 damages. The defendants admit the act of partnership to have been passed as alleged in the petition, but aver that all the obligations therein imposed upon, or assumed by the partner *in commendam*, were faithfully performed by that partner ; and that neither she, nor her tutor before her marriage, nor her husband after her marriage, did any act tending directly, or indirectly, to interfere with, or impair any of the clauses or conditions of the act of co-partnership. The defendants aver that the plaintiff did himself grossly impose upon the partner *in commendam* and the tutor, at the time the co-partnership was formed, in this, that one of the clauses and conditions of the act of co-partnership was in direct violation of the laws of the State, and intended to involve the partner *in commendam* in hopeless ruin. They deny that in their conduct or proceedings in the premises, they have caused the plaintiff any damage ; and allege that, if he has suffered any, it must be imputed to his own mismanagement and bad faith. They aver that the four drafts in question were obtained by them in good faith, and were duly negotiated in the course of business, and are now beyond their control. That as relates to the dissolution of the partnership, they acted under a strong sense of duty, and with a belief that the interest of the partner *in commendam* imperiously required such dissolution, the plaintiff having left the country, and violated the obligations imposed upon him as a member of the firm, and there being danger of the partner *in commendam* being involved in a general partnership. There was a judgment below granting the several prayers of the petition, except as to the damages, which were not allowed. The defendants have appealed.

We think with the judge *a quo*, that the voluminous evidence

spread upon the record makes out the case as stated by the peti-
tioner. But it is said that the clause in the act of partnership,
which provided that the name of the former firm of Jonau, Me-
toyer & Co. should continue to be used, committed the partner *in
commendam* to the extent of an ordinary partner, contrary to her
intention, and that, therefore, she had a right to withdraw from it.
Article 2820 of the Civil Code provides, it is true, that the
use of a name calculated to give a fictitious credit to the part-
nership, if permitted by the partner *in commendam*, destroys the
immunities of the latter, and subjects him to all the responsibilities
of a general partner in the business for which he has made an ad-
vance. If such a name is used without the consent of the part-
ner *in commendam*, he is authorized to withdraw the sum he has
advanced, and, on giving notice in two of the newspapers, he can
free himself from all responsibility, either to the partners or to third
persons, from the time of such notice. Article 2821. But, from
the very terms of this article, it is clear that when this is done,
with the consent of the partner *in commendam*, she has no such
right, and cannot complain of her own act; and in the present case,
the contract of co-partnership expressly provides, that the busi-
ness shall be conducted under the firm of Jonau, Metoyer & Co.,
with the consent of the latter, and the reason given for it is the
good standing and credit which the firm had until then enjoyed.
It has been denied that M. L. H. Benoist could give a valid con-
sent to such a contract, because she was a minor when it was
formed. The nullity of the act of partnership is not pleaded in
the answer, which, on the contrary, fully admits its original valid-
ity, but avers that it should be dissolved at the instance of M. L. H.
Benoist, on account of the clause relative to the use of the name
of Jonau, Metoyer & Co. It is by no means clear that the con-
tract of partnership was originally invalid. N. Benoist, the father
and tutor of Maria Louise Hermina Benoist, who might have
emancipated her by a notarial act, did by such an act form for her
this partnership. He thereby clearly intended to give her the ne-
cessary authorization to enter into a partnership. This authoriza-
tion was equivalent to an emancipation. Whatever words he may
have used, effect must be given to his intention, if expressed, as
in this case, in an act clothed with the necessary solemnities.

Civ. Code, art. 369. An emancipated minor may engage in trade, and is then no more relieved against his commercial engagements than a person of full age. Civ. Code, arts. 379, 1867, 2222. 5 Mart. N. S. 654. If, then, the partnership between Jonau and M. L. H. Benoist be valid, the clause in question is valid also, because an emancipated minor who engages in trade may form a general partnership as well as one *in commendam*. But should the partnership be considered as having been 'originally void or voidable, it has been fully ratified by the marriage contract in which it is recognized, and by which the funds invested in it are constituted a part of M. L. H. Benoist's dower; and since the marriage, A. G. Blanchard, the husband, has further and fully ratified the contract, by entering into a written agreement with Jonau in relation to it, specially referring to the clause authorizing the use of the name of Jonau, Metoyer & Co., and this but a very few days before Jonau's departure for France. This ratification is binding on his wife, he being by law the administrator of the dower. Civ. Code, arts. 2327, 2329, 2330, 2334. But, moreover, as was correctly remarked by the judge below, the notes by means of which M. L. H. Benoist's contribution to the funds of the partnership was made, had been given to her by her father for this purpose, she having no fortune of her own. The notes were a donation made to her by N. Benoist, and in making this donation he had the right to attach to it the condition, that these notes should be her contribution to a partnership which promised at that time to be profitable.

As to the power of attorney under which the act of dissolution of this partnership was executed, it was clearly insufficient. It did not relate to the partnership business, nor is the partnership even alluded to or mentioned in it. Martinez is therein made the general agent of the plaintiff to attend to his private affairs during his temporary absence, and Larrieu, the first clerk of the house, had a power of attorney, under which he conducted the commercial business of the firm. The dissolution of a partnership cannot be viewed as an act of administration; and, therefore, required a special power. It does not come within the general powers of an agent. Civ. Code, art. 2966. Story on Agency, 20, 21.

It has been said that the plaintiff himself advertised the dissolution of the partnership with M. L. H. Benoist, in November,

1839, and cannot, therefore, pray that it be declared to have continued until the 1st of April, 1840, This is a mistake. The notice extracted from the newspapers, refers only to the old firm. It is signed by Jonau, by Metoyer, and by Larrieu, the members of that firm. Not a word is said in it of M. L. H. Benoist, or of the partnership *in commendam*.

From the testimony before us we cannot but consider the dissolution of the partnership obtained from Martinez, as having been made with the sole view, on the part of Benoist and Blanchard, of withdrawing M. L. H. Blanchard's funds from the partnership, and not from any just cause of complaint against the plaintiff, or the fear of the consequences to be dreaded from the clause in relation to the use of the name of the old firm of Jonau, Metoyer & Co. In order to accomplish his purpose, Benoist advised Martinez to secure Metoyer's four drafts by a mortgage on property belonging to the plaintiff, for the purpose of raising money on them for the use of the firm. The drafts thus secured having been delivered to him, on his promise to have them discounted, he retained them, and then called upon Martinez, in writing, for a dissolution of the partnership, which he succeeded in obtaining. This dissolution, and the circumstances under which the possession of these drafts was obtained, have surely not divested Jonau of his property in them; and the judge properly decreed the defendants to surrender them to the plaintiff, or to pay their amount.

*Judgment affirmed.*